```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

iMERCHANDISE LLC,                  :
                                   :
         Plaintiff,                :
                                   :
v.                                 :    CASE NO. 3:20-cv-248(RNC)
                                   :
TSDC, LLC,                         :
                                   :
         Defendant.                :
```

RULING AND ORDER

iMerchandise, LLC ("iMerchandise") is an online retailer that has used the Amazon.com marketplace to sell its products. It brings this diversity action against TSDC, LLC ("TSDC"), for injunctive relief and damages claiming that TSDC's submission of a complaint of trademark infringement to Amazon led to Amazon's deactivation of plaintiff's account. Plaintiff alleges that it tried unsuccessfully to get TSDC to retract the complaint so its storefront on Amazon could be restored but TSDC failed to respond. Plaintiff claims that TSDC's conduct makes it liable for tortious interference with business expectancies, tortious interference with contractual relations, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"). Pending are defendant's motion to dismiss the action in its entirety and plaintiff's motion to amend the complaint. For reasons set forth below, the motion to dismiss is granted and the motion to amend is denied.

I. Background

The following summary of facts is drawn from the allegations in the proposed amended complaint ("PAC"), except as otherwise noted. The allegations of the PAC are accepted as true, and liberally construed, unless there is a conflict between an allegation in the PAC and a document submitted by plaintiff, in which case, I rely on the document. See Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005).[1]

Plaintiff sells merchandise online, including but not limited to t-shirts. For some period of time, plaintiff made use of Amazon's platform to sell merchandise. Under plaintiff's service agreement with Amazon, revenues from sales of plaintiff's merchandise over Amazon's platform were split between the two companies. The service agreement required

---

[1] The PAC alleges that plaintiff made numerous unsuccessful attempts to contact defendant in order to try to get the complaint withdrawn. In the course of these attempts, which began November 23, 2019, plaintiff notified defendant that it had immediately removed the allegedly infringing items from its Amazon storefront, it had made no sales of the allegedly infringing item, Amazon had shut down plaintiff's storefront over the alleged infringement, and plaintiff was suffering significant harm as a result of the shutdown. Plaintiff also invited defendant to document any losses it claimed to have incurred. In short, plaintiff alleges, it tried repeatedly to "resolve the problem and to work out a procedure to adequately address the Parties' respective interests and concerns and, to date, the Defendant has wholly failed to cooperate in this good faith effort."

plaintiff to refrain from selling products that infringed a valid trademark.

Defendant is an LLC that operates in partnership with the Fight Like a Girl Foundation, a charitable foundation that focuses on women experiencing medical hardship. Declaration of Sandy Ellis, Def. Mem., ECF No. 16-2, at ¶ 1-2. Defendant holds the "Fight Like a Girl" trademark, id., and it uses the trademark on its merchandise. Id. at ¶ 3-4.

On November 23, 2019, defendant filed a complaint with Amazon alleging that plaintiff was selling a product that infringed defendant's trademark: a shirt design with the phrase "Fight Like a Girl" over the word "Vote," with the "o" in vote replaced by the symbol ♀. Immediately upon receiving the complaint, Amazon issued a notice to plaintiff stating that it had received a report of trademark infringement from defendant. The notice stated, "We removed the content listed at the end of the email. We may let you list this content again if we receive a retraction from the rights owner." Plf. Mem., ECF No. 18, Ex. 2.

Plaintiff immediately attempted to contact defendant to negotiate a retraction. This was the first in a series of communications sent by plaintiff to defendant in an effort to avoid difficulties with its Amazon account. Plaintiff wanted to "resolve the problem and to work out a procedure to adequately

address the Parties' respective interests and concerns." In its communications to defendant, plaintiff stated that the allegedly infringing item had been removed from Amazon.com before any sales of the item had taken place. Plaintiff also invited defendant to document any losses it may have incurred. Defendant never responded to plaintiff's communications.

On January 20, 2020, Amazon sent plaintiff an email stating:

> Your account has been temporarily deactivated. Your listings have been removed. . . .
>
> Why is this happening?  We have not received a valid plan of action addressing the listings below. . . .
>
> To reactivate your account, please send us the following information:
>
> Proof of non-infringement (e.g. invoice, Order ID, letter of authorization, licensing agreement or court order) for all affected listings.
>
> The steps you have taken to ensure that you are no longer infringing and will not infringe in the future.
>
> Other relevant information.
>
> Supporting details should you believe the notice was submitted in error or the notices are incorrect.

Plf. Mem., ECF No. 12, Ex. D.

Plaintiff continued to try to get defendant's cooperation without success. As a result, plaintiff's Amazon storefront remains shut down.[2]

---

[2] In giving plaintiff the benefit of all possible inferences, I assume for present purposes that retraction of defendant's complaint to Amazon would result in reinstatement of plaintiff's storefront on Amazon's platform. I also assume that defendant

## II.  Legal Standard

"The function of a motion to dismiss under Rule 12(b)(6) is to determine whether the plaintiff has stated a legally cognizable claim that, if proven, would entitle her to relief." Abuhamdan v. Blyth, Inc., 9 F. Supp. 3d 175, 187 (D. Conn. 2014).  Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard if it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see Dominguez v. Taco Bell Corp., -- F. Supp. 3d --, 2020 WL 3263258, at *2 (S.D.N.Y. 2020) ("It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must 'nudge[]' claims 'across the line from conceivable to plausible.'") (quoting Twombly, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

---

could retract the complaint without detriment to its interests in the trademark.

III.  Discussion

A.  Tortious Interference

The first two counts of the PAC allege tortious interference with business expectancies and contractual relations.  In Connecticut, these two torts are "substantially similar."  Kopperl v. Bain, 23 F. Supp. 3d 97, 109 (D. Conn. 2014).  "A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was cause[d] by the defendant's tortious conduct."  Rioux v. Barry, 283 Conn. 338, 351, 927 A.2d 304 (2007).  The elements of a claim for tortious interference with business expectancies are "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss."  Brown v. Otake, 164 Conn. App. 686, 710-11, 138 A.3d 951 (2016).

The facts alleged in the PAC plausibly establish the existence of a contractual or business relationship between plaintiff and Amazon and the defendant's knowledge of the

relationship.  However, the PAC fails to allege facts supporting a plausible conclusion that the defendant's conduct was tortious.

"[N]ot every act that disturbs a contract or business expectancy is actionable."  Robert S. Weiss & Assocs., Inc. v. Wiederlight, 208 Conn. 525, 535-36, 546 A.2d 216 (1988).  Rather, to be considered tortious, interference must be "wrongful by some measure beyond the fact of interference itself."  Id.  This element of the tort may be satisfied by proof "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; or that the defendant acted maliciously."  Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 753-54, 474 A.2d 780 (1984) (citations omitted).  "Malice" in this formulation is used "not in the sense of ill will," but rather to signify that the interference was "without justification."  Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 806, 734 A.2d 112 (1999).  Courts interpreting similar requirements in other jurisdictions have held that interference is actionable only when done solely to injure the plaintiff.  See, e.g., RFP LLC v. SCVNGR, Inc., 788 F. Supp. 2d 191, 196-98 (S.D.N.Y. 2011).

The PAC alleges that the defendant "is guilty of fraud, misrepresentation, intimidation or molestation and/or acted maliciously, with improper motive or improper means."  PAC ¶ 43.

But these "legal conclusion[s], couched in the form of an allegation of fact," may be "disregard[ed]." Kopperl, 23 F. Supp. 3d at 114; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  What matters are the factual allegations.

The PAC relies on the following allegations:

(a) Defendant knew or should have known that Amazon allowed for retractions of complaints without admitting the complaint was in error, PAC ¶ 26;
(b) Defendant habitually or typically preceded legal/administrative/institutional action with prior notice to the alleged infringer, such as a cease and desist letter, ¶ 27;
(c) Defendant knew or should have known from a past incident with plaintiff that plaintiff would be forthcoming in efforts to resolve the alleged infringement, ¶ 28-32;
(d) Defendant has failed to bring any judicial action for trademark infringement, "which demonstrates the non-existence or frailty of any mark infringement claim," ¶ 34;
(e) Defendant ran up the infringement score against plaintiff by alleging 18 violations for a single design, by counting each t-shirt size/color as a separate violation, ¶¶35-36;
(f) Plaintiff made timely efforts to resolve the dispute and defendant failed to deal with plaintiff in good faith, ¶ 38.

These allegations, accepted as true, do not support a plausible inference of fraud, misrepresentation, intimidation, molestation, or malice, for reasons discussed below.

1.  <u>Defendant's Failure to Contact Plaintiff Prior to Submitting Its Complaint To Amazon</u>

Plaintiff contends that a plausible inference of fraud or malice may be drawn from defendant's conduct in submitting a complaint to Amazon without first contacting plaintiff. However, defendant had an interest in protecting its trademark, which would be served by promptly submitting the complaint. See <u>Godinger Silver Art Ltd. v. Hirschkorn</u>, 433 F. Supp. 3d 417, 427 (E.D.N.Y. 2019) (plaintiff failed to plead tortious interference under New York law because there was no plausible allegation that defendant submitted take down notices to Amazon for any reason other than a desire to protect his patents); <u>RFP</u>, 788 F. Supp. 2d at 196 (defendant's actions in protecting trademark were self-interested and thus not done for sole purpose of harming plaintiff as required to support claim under New York law); <u>Am. Diamond Exchange, Inc. v. Alpert</u>, 101 Conn. App. 83, 93, 920 A.2d 357 (2007) (noting that no tortious interference will be found when "the defendant's actions can be justified by obviously proper motives").

Plaintiff contends that a plausible inference of fraud or malice is available to it here, notwithstanding defendant's obvious interest in protecting its trademark, because defendant's conduct in submitting a complaint to Amazon without first contacting plaintiff was a departure from defendant's

prior practice of contacting infringers before taking other action.  No authority has been cited or found suggesting that engaging in otherwise lawful conduct to protect a trademark (such as submitting an infringement complaint to Amazon) may give rise to liability in tort if the trademark holder engaged in less aggressive conduct in response to previous instances of alleged infringement.  Moreover, plaintiff does not allege that submission of a trademark infringement complaint to Amazon without giving prior notice to an infringer violates business norms.  Accordingly, I conclude that defendant's conduct in submitting the complaint without first contacting plaintiff cannot be considered tortious.  See Homes of Westport, LLC v. Wilton Bank, No. CV060403842S, 2007 WL 3010796, at *5 (Conn. Super. Ct. Oct. 2, 2007) (rejecting tortious interference claim when defendant's behavior was "within banking norms").[3]

    2.   Defendant's Failure to Initiate Legal Action to Enforce Its Trademark

Plaintiff contends that a plausible inference of fraud or malice may also be drawn from defendant's failure to sue

---

[3] Plaintiff refers to the duty of good faith and fair dealing under Connecticut law but plaintiff and defendant were not parties to a contract with one another so no such duty existed. Deutsche Bank Nat'l Tr. Co. v. Becroft, No. NHSP-105846, 2014 WL 7641283, at *2 (Conn. Super. Ct. Dec. 30, 2014) ("The duty of good faith and fair dealing does not exist in the air – it is a term implied in a contract . . . .").

plaintiff for trademark infringement. Defendant's failure to bring suit, plaintiff argues, reflects its awareness of the "non-existence or frailty" of any infringement claim. On this basis, plaintiff would have me conclude that defendant knew its complaints to Amazon were groundless.

The inference plaintiff asks me to draw from defendant's failure to sue is implausible. The PAC and underlying documents establish that (a) plaintiff made no sales of the allegedly infringing product, and (b) defendant's complaint to Amazon resulted in removal of the allegedly infringing product from Amazon's marketplace. In these circumstances, it is hardly surprising that defendant has thus far refrained from incurring the considerable expense of suing plaintiff for infringement.[4]

    3.   <u>Defendant's Complaint to Amazon</u>

Plaintiff alleges that defendant is liable for tortious interference because it complained to Amazon in a manner that "ran up the infringement score against plaintiff" in that

---

[4] The Lanham Act contains no statute of limitations, so actions for trademark infringement are subject only to the equitable defense of laches under state law. <u>Excelled Sheepskin & Leather Coat Corp. v. Ore. Brewing Co.</u>, 897 F.3d 413, 419 (2d Cir. 2018). In Connecticut, the most closely analogous statute of limitations is three years. <u>Gibson v. Metropolis of CT LLC</u>, No. 19-cv-00544, 2020 WL 956981, at *4 (D. Conn. Feb. 27, 2020). Because defendant is under no time pressure to decide whether or not to sue plaintiff for infringement, I cannot infer that its failure to initiate a suit before now reflects an awareness of the "non-existence or frailty" of any infringement claim.

defendant alleged 18 violations by counting each t-shirt size and color plaintiff undertook to sell as a separate violation. Defendant responds that it treated each permutation of shirt size and color as a separate violation because that is the way Amazon's report system operates.  Judicially noticeable information confirms defendant's explanation.  FAQs, Merch by Amazon (accessed July 24, 2020), https://merch.amazon.com/resource/201846470 ("Each size/color/fit combination is a separate product in Amazon's system . . . .").[5]  Because the manner in which defendant complained to Amazon conformed to Amazon's system, defendant's conduct does not support a plausible inference of fraud or malice.  See Stancuna v. Schaffer, No. CV085018031S, 2008 WL 5511271, at *2 (Super. Ct. Conn. Dec. 15, 2008) (dismissing tortious interference claim because allegations did not support inference that defendant acted maliciously or was guilty of fraud).

    4.   Defendant's Failure to Cooperate

---

[5] See Threshold Ents. Ltd. v. Pressed Juicery, Inc., -- F. Supp. 3d --, 2020 WL 1694361, at *3 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed."); id. (taking judicial notice of third-party websites and social media posts in a trademark infringement action); Hendrickson v. eBay, Inc., 165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001) (taking judicial notice of information on eBay's website and of the nature of eBay's business operations).

Finally, plaintiff alleges that a plausible inference of malice can be drawn from defendant's failure to respond to plaintiff's repeated attempts to reach out to defendant to negotiate a mutually satisfactory resolution.  I agree with plaintiff that the law should provide incentives to people to cooperate in resolving business disputes.  However, "to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort." Benchmark Muni. Tax Servs., Ltd. v. Greenwood Manor, LLC, 194 Conn. App. 432, 440, 221 A.3d 501 (2019).  "In an ostensibly practical and sensible world, it could not be otherwise.  Our relations and expectancies in life are constantly interfered with by others.  That is an inevitable consequence of living in a competitive world, among people whose ambitions, hopes or purposes may match or conflict with our own." Kopperl, 23 F. Supp. 3d at 110.  As a consequence, "[w]here a tortious interference claim stems from the defendant's passive conduct, 'common sense dictates that a court should inquire whether the defendant was under any obligation to do what it refrained from doing.'" PMG Land Assocs., L.P. v. Harbour Landing Condo. Ass'n, Inc., 172 Conn. App. 688, 694, 161 A.3d 596 (2017) (quoting Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc., 64 Conn. App. 417, 427, 780 A.2d 967 (2001)).

The facts of Downes-Patterson are closely analogous. The plaintiff in that case, an owner of real property, sought to lease its property to a supermarket. But the defendant property owner held a restrictive covenant barring the plaintiff from using its property to operate a supermarket. The plaintiff made repeated attempts to convince the defendant to release the covenant. After a jury found in plaintiff's favor on its CUTPA and tortious interference claims, the trial court set aside the verdicts. The Appellate Court affirmed the trial court's decision. The Appellate Court concluded that "the plaintiffs showed only that the defendant declined to release a property right that it was under no obligation to release. No evidence was put forth that tended to show that the defendant was acting maliciously." Downes-Patterson, 64 Conn. App. at 431-32, 780 A.2d 967. "[T]he plaintiffs' bare assertion that there was no reason for the defendant to refuse to sign the form" was insufficient to support the jury's verdicts. Id. at 432, 780 A.2d 967. Similar claims have failed because the defendant had no legal duty to act in accordance with the plaintiff's wishes. See, e.g., Gerrish v. Hammick, No. CV166070583S, 2018 WL 3060082, at *4 (Super. Ct. Conn. May 31, 2018) (rejecting tortious interference claim because "there [was] insufficient evidence to show [defendant] had a statutory or contractual obligation" to accede to plaintiff's wishes).

In this case, plaintiff's allegations similarly fail to establish that defendant had a legal duty to retract its complaint to Amazon or engage in negotiations with plaintiff at plaintiff's behest.  Plaintiff contends that defendant had a duty to act fairly and in good faith.  As noted earlier, however, there was no contract between plaintiff and defendant to support the existence of such a legal duty under state law. See Becroft, 2014 WL 7641283, at *2.  Therefore, the claims for tortious interference must be dismissed.

B.   CUTPA Claim

Plaintiff's CUTPA claim is based on the same allegations as the tortious interference claims.  Tortious interference and CUTPA claims are not judged "in the same light."  Sportsmen's Boating Corp., 192 Conn. at 756, 474 A.2d 780.  "Conduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability."  Id.  "[L]iability in tort is imposed only if the defendant maliciously or deliberately interfered with a competitor's business expectancies."  Id. at 755.  CUTPA liability, in contrast, "is premised on a finding that the defendant engaged in unfair competition and unfair or deceptive trade practices."  Id.  Though the bar for pleading a CUTPA claim may therefore be somewhat lower than the one that applies to claims for tortious interference, plaintiff's CUTPA claim fails for essentially the same reasons already discussed.

To state a claim for relief under CUTPA, plaintiff's allegations must allow a plausible inference that defendant's actions "offend[] public policy," were "immoral, unethical, oppressive, or unscrupulous," or otherwise "cause[d] substantial injury to consumers." Id. at 756. Like claims for tortious interference, a CUTPA claim based on passive conduct (such as failure to withdraw a complaint) will be dismissed unless the plaintiff can establish that the defendant had a legal duty to act. E.g., Downes-Patterson, 64 Conn. App. at 426-27, 780 A.2d 967 ("The plaintiffs argue that the court improperly imputed a duty requirement to a CUTPA cause of action.  We disagree. . . . Where a plaintiff alleges that a defendant's passive conduct violates CUTPA, . . . common sense dictates that a court should inquire whether the defendant was under any obligation to do what it refrained from doing."); see also id. (citing cases).

As discussed above, plaintiff cannot establish that defendant had a legal duty to retract its complaint to Amazon. Nor can I conclude that defendant's conduct in counting each shirt size and color as a separate violation was violative of CUTPA. Defendant's conduct was "in accordance with common business norms," or, at worst, "nothing more than aggressive business practices." Landmark, 141 Conn. App. at 55, 60 A.3d 983. Accordingly, the CUTPA claim must be dismissed as well.

IV. Conclusion

    For the foregoing reasons, the motion to dismiss the complaint is granted and the motion to amend the complaint is denied as futile.

    So ordered this 31st day of March 2021.

                                            _____/s/ RNC_____
                                                Robert N. Chatigny
                                        United States District Judge